

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCM ELECTRONICS CORPORATIONS, SDN., BHD, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 04 C 5375 ) ) Wayne R. Andersen |
| LASALLE BANK N.A., and FRANKLIN CAPITAL CORPORATION. | ) District Judge ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM, OPINION, AND ORDER

This matter is before the court on defendant LaSalle Bank's motion for summary judgment on the wrongful dishonor claim filed against it by plaintiff BCM Electronics Corporation. For the reasons stated below the defendant's motion is granted.

## STATEMENT OF FACTS

In September 2003, Franklin Capital Corporation ("Franklin"), an Illinois corporation, entered into a financial arrangement with Lextar Technologies ("Lextar"). Franklin agreed to secure letters of credit on Lextar's behalf. Lextar would use the credit to purchase certain goods from BCM Electronics Corporation ("BCM"), a Malaysian corporation. Franklin then applied to LaSalle Bank, an Illinois Corporation, for two letters of credit that BCM could draw from to secure Lextar's purchases. On September 25, 2003, LaSalle Bank issued documentary letter of credit #559329 ("letter of credit 329") to BCM with an expiry date of October 30, 2003. Letter of credit 329 was subsequently amended, the expiration date extended to November 15, 2003.

Letter of credit 329 stated that, in order for BCM to make a successful presentation, it must present (1) the original and three copies of a commercial invoice; (2) a full set of port-to-port bills of lading showing port of loading as any Malaysia port and port of discharge as any USA port; and/or (3) original shipper's copy of air waybill, showing airport of departure as Malaysia and airport of destination as USA; and (4) original and three copies of packing list. In correspondence dated November 11, 2004, Franklin agreed to waive certain discrepancies in BCM's presentation on letter of credit 329 including presentation after the expiry date.

On November 20, 2003, LaSalle Bank issued letter of credit #561528 ("letter of credit 528") to BCM with an expiry date of January 15, 2004. Letter of credit 528 required BCM to present (1) the original and three copies of a commercial invoice; (2) an original shipper's copy of air waybill, showing airport of departure as Malaysia and airport of destination as USA; (3) original and three copies of a packing list; and (4) inspection certificate issued by SGS. From December 16, 2003 until December 22, 2003, BCM made five separate shipments to Lextar, shipping $101,289.96 worth of goods. LaSalle Bank received documents submitted by BCM for payment on letter of credit 329 on December 31, 2003. On January 5, 2004, LaSalle Bank dishonored the presentation, refusing to pay BCM on letter of credit 329 because, among other reasons, the letter of credit expired on November 15, 2003.

On January 8, 2004, LaSalle Bank received BCM's first submission for payment on letter of credit 528. LaSalle Bank sent notice of dishonor to BCM on January 15, 2004, citing BCM's failure to present an inspection certificate and its failure to ship by way of "air waybill" as reasons for dishonor. On January 12, 2004, LaSalle Bank received BCM's second presentation on letter of credit 528. LaSalle Bank again dishonored, sending notice to BCM on January 16, 2004, citing "courier receipt presented instead of awb" and "inspection certificate not presented"

2

as the discrepancies causing dishonor. Franklin agreed in a December 2, 2003 correspondence to waive the discrepancies that LaSalle Bank cited as its reasons for dishonor of both presentations on letter of credit 528.

LaSalle Bank dishonored all three of BCM's presentations and paid nothing on either letter of credit. At some point LaSalle Bank contacted Franklin to discuss waivers of certain presentation discrepancies. LaSalle Bank elected not to waive the discrepancies. When BCM questioned why LaSalle would not waive the discrepancies, LaSalle Bank responded that Franklin requested that it not waive the discrepancies.

## DISCUSSION

For the reasons discussed below, defendant LaSalle Bank's motion for summary judgment on count I of the plaintiff's complaint, the only count filed against LaSalle Bank, is granted. In count I BCM alleges that LaSalle Bank wrongfully dishonored each of BCM's three presentations on letters of credit 329 and 528. BCM seeks a judgment of $101,289.96, the sum of the three attempted draws.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct.

2548 (1986). The court considers the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

At the outset, a brief description of the letter of credit arrangement is worthwhile. The letter of credit is one of three separate agreements typically entered into between three parties. *Integrated Measurement Systems, Inc. v. International Commercial Bank of China*, 757 F. Supp 938, 942 (N.D. Ill. 1991). The first agreement is a sale agreement between a buyer and a seller. The second agreement is between the buyer and the buyer's financial institution. Under the second agreement, the financial institution agrees to secure the buyer's purchase from the seller with a letter of credit. The third agreement is the actual letter of credit, negotiated by the buyer's bank and the seller, which guarantees the seller payment from the financial institution in the event that the buyer itself does not pay. The letter of credit is entirely independent of the other two agreements. *Integrated Measurement Systems, Inc.*, 757 F. Supp at 942. The bank issuing the letter of credit is prohibited from looking at any "material or facts other than those appearing in the draw documents themselves." *Occidental Fire &Casualty Co. of North Carolina v. Continental Bank N.A.*, 918 F.2d 1312, 1315 (7th Cir. 1990). In order to be paid under a letter of credit, the seller must make a presentation to the bank of certain documents that comply with specific terms set forth in the letter of credit. 810 ILCS 5/5-108 (2005).

The letters of credit at issue in this case do not specifically state which law shall be applied in the event of litigation. Revised Article 5 of the Uniform Commercial Code, as adopted by Illinois, *see* 810 ILCS 5/5-101, provides that when a letter of credit is silent regarding choice of law, the law where the issuing bank is located governs the issuing bank's responsibility. UCC § 5-116(b). The issuing bank in this case is LaSalle Bank, an Illinois Corporation, and the governing law is the law of Illinois.

## I. Waivers

BCM first asserts that LaSalle Bank's motion for summary judgment should be denied because a question of material fact remains as to whether and when the Bank knew of certain presentation waivers made by Franklin. An issuing bank is obligated to honor a beneficiary's presentation on a letter of credit if the presentation strictly complies with the terms and conditions of the letter of credit. 810 ILCS 5/5-108. However, an issuing bank can waive certain terms or conditions contained in the letter of credit. *Id.* The Illinois Code provides, "unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply." 810 ILCS 5/5-108(a). Thus, if the issuing bank agrees with the applicant to waive certain discrepancies in the beneficiary's presentation, then the issuing bank is bound by that agreement. *Id.* Waivers made by the applicant directly to a beneficiary are not binding and do not serve to amend the original terms of the letter of credit. 810 ILCS 5/5-108, Comment 7. Only if the issuing bank agrees to the applicant's waivers will those waivers be binding. 810 ILCS 5/5-108(a).

The issue of whether waivers to a letter of credit must be memorialized in writing is also addressed by state statute. "A letter of credit, confirmation, advice, transfer, amendment, or cancellation may be issued in any form that is a record and is authenticated (i) by a signature or (ii) in accordance with the agreement of the parties." 810 ILCS 5/5-104. A record is defined as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." 810 ILCS 5/5-102(14). Therefore any waiver that amends the terms of the letter in credit must be in writing.

BCM is unable show that LaSalle Bank agreed with the presentation waivers made by Franklin. Franklin's waivers are contained in two letters sent to BCM. With respect to letter of

5

credit 329, Franklin sent a November 11, 2003 letter to BCM waiving (1) bill of lading or air waybill "consigned to" issue, (2) shipment made after expiry date of letter or credit, (3) documents submitted after expiry date of letter of credit, and (4) the inspections on goods already shipped. In a December 2, 2003 letter to BCM, Franklin agreed to waive (1) bill of lading or air waybill "consigned to" issue, (2) shipment made after expiry date of letter of credit, (3) documents submitted after expiry date of letter of credit, and (4) certificate of compliance issued by BCM instead of inspection certificate issued by SGS with respect to letter of credit 528. If accepted, these waivers would have allowed for all of the discrepancies in each of BCM's three presentations to LaSalle Bank. However, BCM is unable to produce any documents showing that LaSalle Bank knew of Franklin's waivers, much less agreed to them. For LaSalle Bank to be bound by the waivers, it would have had to agree in writing that the waivers modified letters of credit 329 and 528. BCM cannot make this showing and this argument fails.

**II. Estoppel**

BCM next argues that summary judgment should be denied because LaSalle Bank's delay in dishonoring BCM's final two presentations precluded BCM from curing the presentations' deficiencies and that LaSalle Bank should be estopped from claiming non-conformity as a basis for dishonor. The Illinois Code provides:

> "An issuer has a reasonable time after presentation, but not beyond the end of the seventh business day of the issuer after the day of its receipt of documents:"
>
> (1) "to honor..." or
>
> (3) "to give notice to the presenter of discrepancies in the presentation."
>
> 810 ILCS 5/5-108(b)(1)-(3).

The statute goes on to state that, "an issuer is precluded from asserting as a basis for dishonor any discrepancy if timely notice is not given." 810 ILCS 5/5-108(c). In *Integrated Measurement Systems, Inc.*, a beneficiary made a presentation to an issuing bank on a letter of credit on March 10. 757 F. Supp. 938. On March 30, five days after the letter of credit expired, the issuing bank refused payment. The court found that the bank was estopped from arguing nonconformity as a valid reason for dishonor because the failure to give the beneficiary timely notice of the defects foreclosed any opportunity to cure the discrepancies. *Id.* at 947. The court found that the ten business days that the bank had before the expiration of the letter of credit was far more than enough time to examine the documents. *Id.*

After reaching its holding, the *Integrated Measurement Systems, Inc.* court went on to consider a situation in which a beneficiary waits until the last minute to draw on a letter of credit. *Id.* at 948. The court reasoned that in such a circumstance, "the issuing bank does not have 'to drop everything' to examine the documents." *Id.* In *Datapoint Corp. v. M & I Bank of Hilldale*, the beneficiary made a presentation on a letter of credit one day before the expiration date. 665 F. Supp. 722 (W.D. Wis. 1987). That same day the issuing bank mailed notice of dishonor to the beneficiary, which did not arrive until three days after expiration. The court held that once the issuing bank knew that it was going to dishonor, Uniform Customs and Practice, which were incorporated into the letter of credit, required the bank to give telephonic notice to the beneficiary so that it would have time to cure. *Id.* at 727.

In this case, the final two presentations made by BCM were dishonored in six and five business days respectively, counting the day the bank received the documentary presentations as a business day. *See* 810 ILCS 5/5-108, Comment 2 (stating that "the issuer's time to inspect runs from the time of its receipt of documents.'"). Letter of credit 528 expired on January 15, 2004.

7

BCM was given the first notice of dishonor on January 15 and the second notice of dishonor on January 16. This timing of notice makes the dishonors troubling, as BCM points out. BCM had one day, or part of a day, to cure any defects on the first presentation. BCM was notified of the second dishonor the day after the letter of credit expired and had no chance to make a revised presentation.

Issued on November 20, 2003, letter of credit 528 provided BCM with nearly two months to present. The terms of presentment were not changed after the November 20 issuance. By waiting to present until the final week of the letter's existence, BCM placed itself in a precarious position. BCM was left without payment or a chance to present again due to slight discrepancies in its presentations. LaSalle Bank complied with the statutory requirement of providing notice of dishonor in seven business days and its delay does not estop it from asserting non-conformity as a valid reason for dishonor.

Additionally, the discrepancies that led to the dishonors were missing documents, not technical deficiencies within presented documents. One of the missing documents was to be created during shipping, the other to be created upon arrival. Even if BCM was given notice of dishonor several days before the expiry date of the letter of credit, shipment and arrival of the goods had already occurred and BCM would not have been able to produce these missing documents and cure its presentation.

### III. Strict compliance

BCM's final argument to deny summary judgment is that its presentations complied with the terms of letter of credit 528. Illinois state law requires that "an issuer shall honor a presentation that . . . appears on its face strictly to comply with the terms and conditions of the letter of credit." 810 ILCS 5/5-108. However, the strict compliance rule is not to be applied

inflexibly. Unfairness would result if "banks could simply dishonor letters of credit based on minor, trivial discrepancies that do not place in doubt the terms of the letter of credit." 757 F. Supp. at 944. "[D]iscrepancies that are minuscule and not misleading" should not lead to dishonor. *Id.*

Courts are hesitant to find that an issuing bank wrongfully dishonored a presentation if the beneficiary failed to comply with substantive terms set forth in the letter of credit that were agreed upon by the signatories. Such was the case in *Mount Prospect Bank v. Marine Midland Bank*. 121 Ill. App. 3d 295, 459 N.E.2d 979, 76 Ill. Dec. 844 (1st Dist. 1983). In *Mount Prospect Bank*, the beneficiary of an irrevocable letter of credit made a presentation with a number of documents, including thirty-four invoices. Only three of the invoices pertained to transactions with the applicant. The court found that the beneficiary did not precisely comply with the terms of the letter of credit, which required invoices of all transactions. *Id.* at 302. As a result, the issuing bank was not required to honor the presentment. *Id.*

However, if hypertechnical or unnecessary terms of a letter of credit are not complied with and then are cited by the issuing bank as reasons for dishonor, such action may amount to wrongful dishonor. The issuing bank in *Integrated Measurement Systems, Inc.* asserted that the beneficiary did not comply with the letter of credit because the description of goods contained on the airway bill was inconsistent with the commercial invoice, the wording of the commercial invoice did not match, word for word, the wording required by the letter of credit, and written notations on the airway bill did not contain appropriate certification stamps. 757 F. Supp. at 944. The court found each reason for dishonor to be unpersuasive. *Id.* The court found the first reason simply was incorrect. *Id.* The second reason required compliance with a term in the letter of credit that served no legitimate function to the exchange of goods. *Id.* The final reason

9

for dishonor was found to be empty of purpose; it did nothing to guarantee a more efficient or successful exchange of goods. *Id.*

Here, LaSalle Bank dishonored BCM's first presentation on letter of credit 528 because the presentation did not contain an air waybill or an inspection certificate. LaSalle Bank dishonored BCM's second presentation because BCM presented a courier receipt instead of an air waybill and did not present an inspection certificate. These discrepancies appear to be minor, maybe even unimportant. However, by entering into an agreement to pay pursuant to a letter of credit, a bank that has no first hand knowledge of the agreement for sale of goods underlying the letter of credit is entitled to be cautious and exacting before paying a beneficiary. Before authorizing the letter of credit, the bank must guarantee, in whatever method the parties agree upon, that the goods are in fact what they are purported to be and were shipped in a safe manner to the correct location.

In this case, LaSalle Bank required an inspection certificate from SGS, a known inspector of goods at ports across the globe. BCM failed to meet this requirement. LaSalle Bank also required that the goods be shipped to their destination by air waybill and that such bill would document the shipping. Again, BCM failed to meet this requirement. Instead, BCM presented no inspection certificate and a courier's bill instead of the air waybill. These discrepancies rise above minor, trivial discrepancies and justify dishonor.

That BCM can now look back and say that the shipment arrived safely and contained exactly what BCM represented it would contain does not change the fact that BCM's failure to strictly comply deprived LaSalle Bank of the safeguards it put in place by negotiating for specific terms of presentment in the letters of credit. LaSalle Bank contracted for the right to know that the goods were in proper condition and were what BCM represented them to be

without having to undertake any additional investigation to confirm these facts. If BCM found the terms of the shipping agreement to be unreasonable or impossible to fulfill, BCM could have attempted to renegotiate the terms of the agreement or refused to sign the letters of credit. BCM did neither; instead it agreed to the terms of the letter of credit and then neglected to follow several of those terms. BCM now argues that its goods arrived safely and are what they were purported to be. BCM claims that as a result, it should rightly be paid. That argument is inadequate as it deprives LaSalle Bank of the safety guaranteed by the letter of credit.

## CONCLUSION

For the foregoing reasons, LaSalle Bank's motion for summary judgment on count I of the complaint (#25) is granted. Count II of the lawsuit still remains against defendant Franklin Capital Corporation. BCM Electronic Corporation's motion to have uncontested facts set forth in Plaintiff's 56.1 statement of additional facts deemed admitted ( # 35) is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: March 22, 2006